Succession of Lyons.

## No. 7407.

## No. 7130.

### SUCCESSION OF L. W. LYONS.

Where in an appeal-bond the blank space for the name of the surety remains blank, and the principals have signed the bond, and another name is signed thereto under that of the principals', without the word "surety" appended, it will be presumed that such name is that of the surety, and that it was signed as such, and the bond will be good.

The fact that an estate appears to be insolvent by the administrator's account does not prevent the heirs from contesting the apparent insolvency and investigating the verity of it.

The heirs can do this by appeal from the judgment homologating the administrator's account. They are not third parties, but the law conclusively presumes their interest from their quality as heirs.

Where the accounts of the administrator of a succession and the liquidator of a mercantile firm have both been homologated after oppositions thereto, and many years have elapsed, and the minor children through their tutrix seek through an appeal to upset these judicial proceedings, the general aspect of fairness and correctness that pervades the accounts, and the fact that the tutrix who is now complaining approved the very accounts she now attacks, and the further fact that counsel of the first rank at the bar, representing the creditors, had watched the gestion both of the administrator and of the liquidator, and the accounts had successfully passed through this ordeal, — will be circumstances strongly indicating that all was rightly done.

APPEAL from the Second District Court of New Orleans. TISSOT, J.

*Louque* for the Heirs Appellants. *Thomas* and *Lewis* for a Creditor. *Hunt* for other Creditors. *Cotton & Levy* and *G. L. Hall* for Stevens Liquidator.

Lyons died in 1867, and his widow qualified as his administratrix and tutrix. The largest asset of the estate was the decedent's interest in the clothier-house of L. W. Lyons & Co., the company being H. B. Stevens, who was appointed liquidator of the firm. The mother of the deceased, sued the succession for alimony, and the widow as administratrix answered that the debts nearly equalled the assets, and there would be left barely sufficient to support the children. Succession Lyons, 22 La. Ann. 627. Mr. Stevens, as a witness in that suit in 1868, stated he did not think the stock and assets of the firm would pay the recognized debts. In 1869 the creditors procured the removal of the widow from the administration on the charge of mismanagement, and the court appointed L. Castera in her stead. In 1871, Stevens filed his final account, which was opposed by sundry creditors, and was homologated upon trial. Castera's account as administrator was also homologated. During the progress of these proceedings several judgments had been rendered and they entered into these accounts as items. In March, 1878, Mrs. Lyons as tutrix, and her eldest son, an emancipated minor, took this appeal from fourteen of those judgments, the first one having been rendered October 5, 1868.

The motion to dismiss was at first sustained, MANNING, C. J., rendering the opinion on the point of non-insertion of the surety's name in the blank and no indication of his quality at the signature, DE BLANC and EGAN, J. J., dissenting. On rehearing the court unanimously set the dismissal aside, saying through

SPENCER, J. The bond recites that it is given as an appeal bond. It was received by the clerk and filed as an appeal bond. The signature of Devonshire is where the surety should sign. An appeal bond presupposes and recites that there is a surety to sign it, and his name as written is not one of the principals. He does not sign as a witness nor on the witness side. We are bound to believe he signed as surety.

On the other ground for dismissal, not before considered, which

Succession of Lyons.

questions the right of appellants to appeal for want of interest because the accounts show the estate is insolvent.   The very purpose for which they appeal is to investigate the verity of this insolvency. They are the children of Lyons.   Final judgments may be questioned by appeal, or by action of nullity.   According to appellee's doctrine the greater the wrong of an administration, the greater the security of the wrong-doer.   He has only to swallow up the estate, return it insolvent, and he is safe.   When the heir comes to question his gestion, he triumph intly informs him, "you have no interest, the estate is insolvent."   Third persons appealing must show an interest, but an heir is not a third person.   He is the representative of the deceased, and the law conclusively presumes his interest from his quality as heir.

*Motion denied.*

On the merits.

After reciting the facts, the judicial proceedings, and the evidence,

MANNING, C. J.   Every step taken by either the liquidator or the administrator in the long and difficult proceedings for the settlement of the affairs of the firm, and of the succession, is pronounced a false step, and the whole litigation conducted between these officers and the creditors is now attacked for informality and fraud.   Counsel of the first rank at the Bar, representing the creditors, had watched the gestion both of the liquidator and administrator, and had objected and opposed it at almost every stage of it, and their accounts had passed this ordeal successfully, and received the approbation of the court.

We do not think the proceedings of the liquidator and administrator are fairly open to attack.   On the contrary, both of these officers acted with prudence and judgment.   The shrinkage of the assets of the succession was great, but no greater than might have been and was foreseen.   The creditors have not been paid in full because the assets were insufficient, but they have received all they can receive, and are no longer objecting to any part of the gestion of the officers. When the creditors' claims are unsatisfied, the heirs are without interest.   Mrs. Lyons herself, as tutrix of the heirs, proved in 1868, in a legal contestation that the estate was presumably insolvent, and exhibited data, which rendered that insolvency almost certain, and in 1878, she and the heirs whom she represented, seek to make

it appear that the shewing then made was fallacious, and the data all incorrect.

We, by no means, mean to limit the right of heirs to require due account of a succession, but in this case, every step that was taken was contradictorily with their tutrix. She approved accounts, and is now appealing from judgments of homologation, which she acquiesced in. Fourteen judgments are selected as points of attack — isolated and separated acts of gestion are taken out of the general administration to be overturned.

The salient fact, is that the succession was largely insolvent. If, after the lapse of several years, when many of the records are lost, and the lawyers who had personal knowledge of their contents are dead, some defects should be discovered which would increase the assets of the succession, these would still be absorbed by the debts. There must be an end of litigation, and we are satisfied that the appellants are not damaged by the end of this suit.

*Judgments affirmed.*